UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SUNSHINE STORES, INC., ET AL.,   ) | |
| ) | |
| Plaintiffs,   ) | |
| ) | CIVIL ACTION NO. |
| VS.   ) | |
| ) | 3:09-CV-1352-G |
| ERIC HOLDER, U.S. Attorney General,   ) | |
| ET AL.,   ) | |
| ) | |
| Defendants.   ) | |

## MEMORANDUM OPINION AND ORDER

Before the court is the defendants' motion for summary judgment (docket entry 47).  For the reasons set forth below, the motion is granted.

### I. BACKGROUND

This is an immigration case.  The plaintiffs are Sunshine Stores Inc. ("Sunshine Stores"), a Texas-based retailer, and husband and wife Ramzan Ali ("Mr. Ali") and Munira Ramzan Ali ("Mrs. Ali").  Plaintiffs' First Amended Petition to the Original Complaint for Writ of Mandamus and Declaratory Relief ("Complaint") ¶¶ 3, 5-6 (docket entry 14).  The defendants are Eric Holder, Janet Napolitano, Michael Aytes,

David Roark, and Mark Hazuda (collectively, United States Citizenship and Immigration Services or "USCIS"). *Id*. ¶¶ 1, 7-11.

On October 12, 2003, the Alis were admitted to the United States with B-2 visitor status on a single entry visa. Brief in Support of Defendants's Motion for Summary Judgment ("Brief") at 6 (docket entry 48). Under this visa, they were authorized to remain in this country until April 11, 2004. *Id*.

On April 2, 2004, nine days before the scheduled expiration of their initial visa, the USCIS received the Alis' first Form I-539 application to extend their nonimmigrant status ("I-539 #1"). *Id*. at 7. In this application, the Alis explained that their stay in the United States would be "temporary," and that they "do not intend to stay here longer than [their] authorized time." *Id*. They wished to extend their B-2 visitor status through October 10, 2004. *Id*.

While the I-539 #1 application was pending, the USCIS received Sunshine Stores' Form I-129 petition for a nonimmigrant worker. *Id*. In this petition, Sunshine Stores requested that Mrs. Ali's status be changed from a B-2 visitor to an H-1B nonimmigrant worker, so that Mrs. Ali could work at Sunshine Stores as an accountant. *Id*. Concurrently, Mr. Ali filed a second Form I-539 application ("I-539 #2"), in which he requested that his B-2 visitor status be changed to H-4 dependent status. *Id*. at 7-8. Thus, Mr. Ali's I-539 #2 application was contingent upon Ms.

Ali's I-129 application. *Id*. at 9. Both Alis wished to have their stays in the United States extended until October 1, 2007. *Id*. at 7.

On June 15, 2004, USCIS requested that Sunshine submit additional evidence in support of Mrs. Ali's I-129 on the question of whether her potential position was a "specialty occupation." *Id*. at 8. On August 19, 2004, USCIS received Sunshine's response. *Id*.

On August 30, 2004, USCIS denied the Alis' I-539 #1 request for extension of their B-2 visitor status. *Id*. A principal reason for the denial was that Sunshine Stores had filed an I-129 petition on behalf of Mrs. Ali. *Id*. at 9. The USCIS explained that this demonstrated that the Alis did not intend to leave the United States. *Id*. at 9.

On September 1, 2004, USCIS denied Sunshine's I-129 petition for failure to establish that the position met the regulatory definition of a "specialty occupation." *Id*. Concurrently, USCIS denied Mr. Ali's contingent I-539 #2 request to change his status from a B-2 visitor to an H-4 dependent. *Id*.

After the USCIS denied the I-539 #1, I-539 #2, and I-129 requests, the plaintiffs filed a series of motions to reopen and reconsider their applications, as well as an appeal to the Administrative Appeals Unit. *Id*. at 10-13. All of the plaintiffs' motions and appeals were denied. *Id*.

On July 17, 2009, the plaintiffs filed this suit challenging the USCIS' decision on their I-539 and I-129 requests. On September 23, 2011, the defendants filed this

motion for summary judgment.  Summary judgment is proper when the pleadings, depositions, admissions, disclosure materials on file, and affidavits, if any, "show[] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FEDERAL RULE OF CIVIL PROCEDURE 56(a), (c)(1).  A fact is material if the governing substantive law identifies it as having the potential to affect the outcome of the suit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  An issue as to a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*; see also *Bazan ex rel. Bazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001) ("An issue is 'genuine' if it is real and substantial, as opposed to merely formal, pretended, or a sham.").  To demonstrate a genuine issue of material fact, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 475 U.S. 574, 586 (1986).  The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in his favor.  *Anderson*, 477 U.S. at 249 (citing *First National Bank of Arizona v. Cities Service Company*, 391 U.S. 253, 288-89 (1968)).

When evaluating a motion for summary judgment, the court views the evidence in the light most favorable to the nonmoving party.  *Id.* at 255 (citing *Adickes v. S.H. Kress & Company*, 398 U.S. 144 (1970)).  However, it is not incumbent upon

the court to comb the record in search of evidence that creates a genuine issue as to a material fact. See *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). The nonmoving party has a duty to designate the evidence in the record that establishes the existence of genuine issues as to the material facts. *Celotex Corporation v. Catrett*, 477 U.S. 317, 324 (1986). "When evidence exists in the summary judgment record but the nonmovant fails even to refer to it in the response to the motion for summary judgment, that evidence is not properly before the district court." *Malacara*, 353 F.3d at 405.

II. ANALYSIS

A. Judicial Review of Administrative Agency Decisions

Under the Administrative Procedures Act, 5 U.S.C. § 500 *et seq.* ("APA"), "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." *Id*. § 702. In particular, a "reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id*. § 706(2)(A). The Fifth Circuit has explained that an agency's action is arbitrary and capricious

> "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the

>agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise."

*Luminant Generation Company, L.L.C. v. United States Environmental Protection Agency*, 675 F.3d 917, 925 (5th Cir. 2012) (quoting *Texas Oil and Gas Association v. Environmental Protection Agency*, 161 F.3d 923, 955 (5th Cir. 1998)).

The scope of review of agency actions under Section 706(2)(A) is "very narrow." *Delta Foundation, Inc. v. United States*, 303 F.3d 551, 563 (5th Cir. 2002) (quoting *Louisiana v. Verity*, 853 F.2d 322, 327 (5th Cir. 1988)). "The court's role is not to weigh the evidence pro and con but to determine whether the agency decision 'was based on a consideration of the relevant factors and whether there was a clear error of judgment.'" *Id*. (quoting *Louisiana*, 853 F.2d at 327). "Thus, if the agency considers the factors and articulates a rational relationship between the facts found and the choice made, its decision is not arbitrary and capricious." *Id.* (quoting *Harris v. United States*, 19 F.3d 1090, 1096 (5th Cir. 1994)). "The 'agency's decision need not be ideal, so long as it is not arbitrary or capricious, and so long as the agency gave at least minimal consideration to relevant facts contained in the record.'" *Id*. (quoting *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, 43 (1983)).

### B.  Requests under I-129 and I-539 #2

The plaintiffs argue that the USCIS' denial of their I-129 and I-539 #2 requests was "arbitrary, capricious, and not in accordance with law." Complaint ¶ 29.

In particular, they argue, the USCIS was wrong to determine that the position that Sunshine Stores had for Mrs. Ali was not a "specialty occupation." *Id*. ¶ 28. In this case, the court concludes that the USCIS' determination that the Sunshine Stores position was not a "specialty occupation" was not arbitrary and capricious.

1. *Legal Standard: What Constitutes a "Specialty Occupation"*

Under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, a qualified temporary nonimmigrant alien can come to the United States to work for a sponsoring employer in a "specialty occupation." *Id*. § 1101(a)(15)(H)(i)(b). These aliens are known as "H-1B" nonimmigrants. 8 C.F.R. § 214.2(h)(1)(ii)(B). If an employer wishes to employ an H-1B nonimmigrant, the employer must demonstrate that offered position is a specialty occupation, and that the potential H-1B nonimmigrant is qualified for the position. *See* 8 C.F.R. § 214.2(h)(4)(iv)(A).

A "specialty occupation" is one that requires "theoretical and practical application of a body of highly specialized knowledge, and [the] attainment of a bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry into the occupation in the United States." 8 U.S.C. § 1184(i)(1)(A)-(B). To qualify as a specialty occupation, the position offered by the employer must meet one of the four following requirements:

> (1) A baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position;

>   (2)  The degree requirement is common to the industry in parallel positions among similar organizations or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree;
>
>   (3)  The employer normally requires a degree or its equivalent for the position; or
>
>   (4)  The nature of the specific duties are so specialized and complex that knowledge required to perform the duties is usually associated with the attainment of a baccalaureate or higher degree.

8 C.F.R. § 214.2(h)(4)(iii)(A).

## 2. *Application*

In this case, Sunshine Stores filed an I-129 request to change Mrs. Ali to an H-1B nonimmigrant so she could be employed as an accountant. *See* Brief at 15. The USCIS denied the I-129 request on the grounds that Sunshine Stores failed to demonstrate that the position constituted a "specialty occupation." *Id*. After reviewing the record, the court concludes that the USCIS did not act arbitrarily and capriciously when it denied Sunshine Stores I-129 application.

First, it is clear that Sunshine Stores did not "normally require[] a degree or its equivalent for the position." *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(3). This is because Sunshine Stores had never previously employed anyone as an accountant. Brief at 8.

Second, Sunshine Stores failed to show that a baccalaureate or higher degree was a normal requirement for that position, or a parallel position in similar

organizations. *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(1)-(2). After Sunshine Stores submitted the I-129, USCIS requested additional evidence on whether the position that Mrs. Ali would fill was a specialty occupation. Brief at 8. The response contained a lengthy description of what Mrs. Ali would be doing if she filled the position. Appendix to Brief in Support of Defendants's Motion for Summary Judgment ("Appendix") at 22-74 (docket entry 49). However, the vast majority of this description was an explanation of what accountants and financial managers do in general. While many positions for accountants do require advanced degrees, Sunshine Stores failed to show that the particular position it was offering Mrs. Ali would normally require such a degree in the industry.

Finally, Sunshine Stores failed to show that the particular position was so specialized, complex, or unique that it could only be performed by an individual with a degree. *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(4). While the plaintiffs' complaint alleges that Sunshine Stores has gross revenues of over $6,000,000, Complaint ¶ 3, the I-129 filed in 2004 stated that Sunshine Stores' gross annual income was "+$100,000", and that it employed ten individuals, Appendix at 4. However, as the Administrative Appeals Unit noted, "[n]ot all accounting employment is performed by degreed accountants." Appendix at 134. Instead, many accounting tasks are completed by individuals with "associate degrees or certificates, or who have acquired their accounting expertise through experience." *Id.* After considering the size and

complexity of Sunshine Stores' operations, the USCIS reasonably decided that its accounting needs did not require someone with an advanced degree.

As a result, it was not arbitrary or capricious for the USCIS to deny Sunshine Store's I-129 request. Moreover, because Mr. Ali's I-539 request was contingent on Sunshine Stores I-129 request, it was not arbitrary or capricious for the USCIS to deny Mr. Ali's I-539 request.

### C.  Requests under I-539 #1

Mr. and Mrs. Ali also argue that the USCIS was arbitrary and capricious in denying their I-539 #1 request to extend their B-2 nonimmigrant visitor status. In this application, the Alis stated that they "have substantial ties with India and intend to return upon completion of our visit." Appendix at 156. They explain that their "stay in the United States will be temporary and [they] do not intend to stay here longer than [their] authorized time." *Id*. However, while the I-539 #1 request was pending, Sunshine Stores submitted the I-129 request on behalf of Mrs. Ali. Brief at 25. As stated in the denial of the I-539 #1 request, "[t]his action strongly suggests that through your attorneys, you submitted your applications primarily to circumvent the immigration laws of the United States." *Id.*; *see also* Appendix at 166. As a result, it was not arbitrary or capricious of the USCIS to deny the Alis' I-539 #1 request.

III.  CONCLUSION

For the reasons set forth above, the defendants motion for summary judgment is **GRANTED**.  Judgment will be entered for the defendants.

**SO ORDERED**.

May 21, 2012.

*A. Joe Fish*
**A. JOE FISH**
**Senior United States District Judge**